STATE of Tennessee, ex rel. T.H., by her next friend H.H., and E.H. and H.H. on their own behalf, Plaintiffs–Appellants,

v.

Nancy–Ann MIN, in her capacity as Commissioner of the Tennessee Department of Human Services, Defendant–Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 29, 1990.

Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

Joanne M. Bonacci, Konnie M. Wallen, Vanderbilt Legal Clinic (Specially admitted to practice pursuant to Supreme Court Rule 7, § 10.03), and Andrew J. Shookhoff, Vanderbilt Legal Clinic, Nashville, for plaintiffs-appellants.

Charles W. Burson, Atty. Gen. & Reporter and Dianne Stamey Dycus, Asst. Atty. Gen., Nashville, for defendant-appellee.

OPINION

CANTRELL, Judge.

The question presented in this appeal is whether the due process provisions of the state and/or federal constitutions required the Juvenile Court of Davidson County to appoint counsel for the appellants in a proceeding in which the appellants faced the possibility of losing custody of their child.

Pursuant to the order to proceed under a pseudonym, plaintiffs will be referred to as H.H. and E.H. on their own behalf and in behalf of their minor daughter T.H.

On March 3, 1987, the Department of Human Services filed a petition in juvenile court alleging T.H. to be dependent and neglected. An emergency order was entered by the juvenile court on the same day, giving the Department of Human Services temporary custody of T.H. A preliminary hearing was held on March 6, 1987, at which time the Department of Human Services was given temporary custody of T.H. Following an adjudicatory hearing on May 19, 1987, T.H. was found to be a dependent and neglected child and temporary custody

was placed with the DHS. The plaintiffs were not represented by counsel at these hearings and the juvenile court did not ask the plaintiffs whether they were able to hire counsel or whether they desired to have counsel appointed to represent them.

Subsequent to this hearing, the plaintiffs obtained counsel and on October 14, 1987, an agreed order was entered allowing the plaintiffs to have access to DHS records. No petition for a rehearing or modification of the custody order was filed by the plaintiffs in the juvenile court.

On February 15, 1989, H.H. and E.H. filed a complaint and a petition for a writ of habeas corpus in the Chancery Court of Davidson County. The action, against the Commissioner of the Tennessee Department of Human Services, sought a declaratory judgment that the plaintiffs' due process rights were violated by the failure of the juvenile court to appoint counsel to represent them at the various custody hearings. The plaintiffs requested that the chancery court declare the orders of March 6, 1987 and May 19, 1987 void and direct that T.H. be released from custody unless the Hs were afforded a new hearing on the dependent and neglect petition within a reasonable time.

The chancellor held that the appointment of counsel in child custody termination proceedings should be determined on a case-by-case basis and that the proceedings in juvenile court met the requirements of due process.

### Due Process

■ The state concedes, and the court decisions leave no room for doubt, that the parental right to raise one's children is a fundamental liberty protected by the due process clause of the fourteenth amendment. *See Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The appellants argue that due process gave them an absolute right to counsel at the hearings in March and May of 1989.

■ We are of the opinion, however, that the United States Supreme Court's decision in *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), still represents the law in a case involving an indigent parent's right to counsel in a proceeding affecting parental rights. In that case, the Supreme Court held that a parent does not have an absolute right to counsel in such a proceeding. Recognizing that the requirements of due process vary from case to case, the court said that the interests at stake play a large part in deciding what due process requires. *Id.* 101 S.Ct. at 2158. In the earlier case of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the court identified the elements to be examined in deciding what process is due. They are: the parent's interest, the state's interest, and the risk that the failure to appoint counsel will lead to an erroneous decision. 424 U.S. at 335, 96 S.Ct. at 903. After considering the circumstances in the *Lassiter* case, the court held that the state of North Carolina had not deprived the parent of her due process rights by failing to appoint counsel for her at the hearing resulting in the termination of her parental rights.

■ In a particular case, however, an indigent parent facing a hearing affecting parental rights *may* be entitled to the assistance of counsel as a matter of due process. In applying the *Lassiter* and *Mathews* tests we look to the parents' interest, the state's interest, and the risk of an erroneous decision. We have already recognized the interest of the parents as one that "undeniably warrants deference, and, absent a powerful countervailing interest, protection." *Lassiter v. Dept. of Social Services,* 452 U.S. at 27, 101 S.Ct. at 2160. We note, too, that the state has an urgent interest in the welfare of the child as well as an interest in an economic and efficient procedure. *See Davis v. Page,* 714 F.2d 512 and 516 (5th Cir.1984).

Because the competing interests of the parents and the state are evenly balanced, the third part of the test—the chance that the failure to appoint counsel will result in an erroneous decision—becomes the main

consideration in this case. Both, the parents and the state, share an interest in an accurate and just decision. *Id.* To help assess the risk of an unfair proceeding resulting in an erroneous decision, the courts in *Lassiter* and *Davis* have listed several factors that bear on the question. They include: (1) whether expert medical and/or psychiatric testimony is presented at the hearing; (2) whether the parents have had uncommon difficulty in dealing with life and life situations; (3) whether the parents are thrust into a distressing and disorienting situation at the hearing; (4) the difficulty and complexity of the issues and procedures; (5) the possibility of criminal self-incrimination; (6) the educational background of the parents; and (7) the permanency of potential deprivation of the child in question. *Lassiter,* 101 S.Ct. at 2161–2163; *Davis,* 714 F.2d at 516–517.

■ Applying these factors to the present case, we find that the State possessed documents containing medical and psychological information which was used against the Hs at the hearing. The Hs were unaware that such documents and reports existed until they were admitted into evidence at the hearing on May 19, 1987. The primary testimony presented by the State at that hearing was that of Kathy Gracey, a mental health professional from Luton Mental Health Center, who was T.H.'s therapist. Ms. Gracey testified at length about conversations she had with T.H. and her professional assessment of the family. Much of this testimony was hearsay and could have been objected to had the Hs understood the rules of evidence.

The Hs are poorly educated. E.H. completed the sixth grade, while H.H. completed only the fourth grade. In their affidavit, they said "We write fine, but we don't read too well and don't understand a whole lot of stuff." They did not understand the basic court procedure and had trouble asking questions; they never understood the kinds of information that were relevant to the proceeding.

In addition, the Hs have undoubtedly had uncommon difficulty in dealing with life and life situations. The records of the juvenile court and the reports of the Department of Human Services reveal inconsistent income, cluttered and deplorable living conditions, and alcohol and substance abuse. Long-term protective services have been provided for the Hs by the DHS for almost ten years, which have included assistance with utility bills, food, clothing for T.H., counseling, psychological testing, and Homemaker Services. The Department of Human Services has also provided transportation for family members to doctors' offices, grocery stores, the D.H.S. office for public assistance applications, to counseling centers, and to numerous other locations.

While the difficulty and complexity of the issues and procedures may not have been significant to the ordinary lay person, the education, intelligence and personal experience of the Hs are so minimal that they could barely understand what was going on. These people were thrust into a distressing and disorienting experience at the hearing to such an extent that, when asked by the court to make a statement, E.H. rambled from subject to subject, while H.H. said nothing at all. Also, E.H. made a statement to the court potentially exposing herself to criminal prosecution.

We think that consideration of all these factors indicate that the parents should have been provided counsel in this case.

### Relief

The plaintiffs are entitled to a declaration that they were deprived of due process by the failure to appoint counsel for them at the hearings in March and May of 1987. Thus, they are entitled to a rehearing on the dependency and neglect petitions under which the state took custody of their child. If the state does not give them a new hearing within a reasonable time, the child should be released from custody.

The judgment of the court below holding that the plaintiffs were not entitled to an absolute right to counsel is affirmed. The part of the judgment holding that the plaintiffs were not entitled to counsel in this case is reversed and the cause is remanded

to the Chancery Court of Davidson County for further proceedings. Tax the costs on appeal to the state.

TODD, P.J., and LEWIS, J., concur.