# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
_____

**IN THE MATTER OF:**
**RENEE CARMON VALLE, d/o/b**
**6/6/96, OBED VALLE, d/o/b 5/31/95,**     Shelby County Juvenile No. J2905
**Minor Children,**                        C.A. No. W1998-00617-COA-R3-CV

_____

FROM THE SHELBY COUNTY JUVENILE COURT
THE HONORABLE GEORGE BLANCETT, SPECIAL JUDGE

**FILED**

February 17, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

Debra N. Brittenum and Webb A. Brewer
Memphis Area Legal Services
For Appellants, Cynthia and Gilberto Valle

Garland Erguden of Memphis
For Appellee, Court Appointed Special Advocates

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD, P.J., W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is a termination of parental rights case. The parents, Gilberto and Cynthia Valle, appeal the order of the juvenile court terminating their parental rights to Obed Valle and Renee' Valle. For the reasons hereinafter stated, we reverse the juvenile court order.

Obed was born on May 11, 1995. On June 6, 1995, Obed was found to be

dependent and neglected and placed in the custody of the Tennessee Department of Children's Services (DCS). Renee' was born on July 6, 1996, and on July 9, 1996, she was placed in DCS custody as a dependent and neglected child. Both children were placed in foster care, and court approved plans were adopted for both with the goal of reunification of the family.

On March 4, 1997, Court Appointed Special Advocate (CASA) was appointed after DSC recommended that the children stay in foster care. On February 20, 1998, CASA filed a petition for termination of parental rights pursuant to T.C.A. § 36-1-113 (c) alleging that: (1) the children had been abandoned pursuant to T.C.A. § 36-1-113(g)(1) as defined in T.C.A. § 36-1-102; (2) pursuant to T.C.A. §§ 36-1-113(g)(2) and 37-2-403 appellants failed to substantially comply with the plans of care; (3) pursuant to T.C.A. § 36-1-113(g)(3)(A)(I-iii) the children were removed from appellants' home by court order for a period of six months, and that the conditions that led to removal persist with little likelihood of an early remedy; and (4) that termination was in the best interest of the children.

On April 15, 1998, CASA was granted a default judgment by Judge McDowell when appellants failed to answer calendar call because they were in the hall. Later that day the judgement was set aside. Judge McDowell agreed that an attorney should be appointed to represent Mrs. Valle due to her history of mental illness and that a *guardian ad litem* was needed to represent the needs of the children. On April 29, 1998, orders were entered appointing an *attorney ad litem* to protect the lawful rights of Mrs. Valle and a *guardian ad litem* was appointed for the protection of the children's rights.

A report and recommendation was filed by both the *guardian ad litem* and *attorney ad litem*. The *guardian ad litem* interviewed Mrs. Valle twice and stated in his report that "[a]lthough the mother appears to be a caring mother and wants to have custody of her children, neither she nor her husband seemed to be in a position to take care of the minor children at this time." The *guardian ad litem* recommended that the custody remain with DCS with further efforts to assist the Valles in parenting, and that termination of parental rights is premature at this time.

The *attorney ad litem* stated in her report[1] that "[i]t is not apparent that DCS has made every attempt to work with Mrs. Valle to accomplish reunification of the family." The *attorney ad litem* further reported that she does not believe that the decision by

---

[1] It is unclear to this Court why the attorney appointed to assist Mrs. Valle was an *attorney ad litem,* and further why she filed a report , a task usually accomplished by the *guardian ad litem* in actions concerning parental rights.

DCS to terminate the parental rights of Mrs. Valle is based on factual evidence but rather on the fact that Mrs. Valle was incarcerated, and because she suffers from a mental illness. The *attorney ad litem* also recommended that the petition for termination of parental rights be dismissed at this time.

The matter was heard on May 28, 1998, by Special Judge George Blancett. Ms. Fannie Lamar, the children's DCS case manager, testified on behalf of CASA.

Ms. Lamar testified that Obed came to the attention of DCS shortly after his birth when the hospital contacted DCS to express concern about releasing him with Mrs. Valle due to her mental condition. Ms. Lamar testified that on June 6, 1995, she filed a petition and a protective order in an effort to bring Obed into state custody. On July 7, 1995, an order was entered finding Obed dependent and neglected and placing Obed in state custody. Ms. Lamar stated that an effort was made through the organization, Home Ties, to keep Obed in Mrs. Valle's home, but that she was uncooperative and noncompliant with her medication and treatment of her mental illness. According to DCS policy a plan was developed for the care of Obed shortly after he came into state custody. The goal of the original plan was reunification with the family. Ms. Lamar testified that although parents generally participate in developing these plans, the Valles did not take part because DCS did not know where Mrs. Valle was, and Mr. Valle was incarcerated.

According to Ms. Lamar, under the plan Mrs. Valle was to attend parenting classes, maintain her medication, and to maintain contact with the department to facilitate arrangements for visitation. Under the plan Mr. Valle was to attend parenting classes and to indicate to DCS when he would be available for visitation. Obed's plan was updated sometime around the end of December, 1995 by Ms. Lamar and Mrs. Valle. The update included medical releases from Mrs. Valle and Mr. Valle was referred to Alcoholic's Anonymous due to excessive drinking. Mr. Valle was also referred to Martin Luther King Center for alcohol treatment, however DCS never received any indication that he had been treated for alcohol abuse.[2]

As to Renee', Ms. Lamar testified that she came into the custody of the state in much the same that Obed had come into custody, when the hospital called DSC expressing concern that Mrs. Valle could not care for Renee'. Ms. Lamar filed a petition on July 9, 1996, when Renee' was three days old, to bring her into state custody. Shortly thereafter an order was entered bringing Renee' into state custody and ordering

---

[2] Ms. Lamar testified that alcohol treatment became one of Mr. Valle's tasks in the plan because he came in for visitations smelling of alcohol.

Mr. Valle to pay $105.00 monthly child support by income assignment. Mrs. Valle participated in developing the plan for Renee'.

Ms. Lamar further testified that during the three years that the children have been in custody, DCS has not received any reports that Mrs. Valle was under psychiatric care, and that neither Mr. or Mrs. Valle have completed parenting training. Neither parent has contributed monetary child support to either child.

Regarding visitation, Ms. Lamar testified that at all times the Valles' visits with their children were supervised. DCS initially allowed them a good deal of liberty in scheduling the visits, however, due to hostility between Mr. and Mrs. Valle, they were required to have separate visitations. Over the three year period visitations were sporadic for both parents and at times DCS would not know the location of Mrs. Valle. In a foster care review hearing Mr. Valle's visits were limited to once a month. In March of 1997, orders were entered directing that Obed and Renee' stay in foster care with the goal changed to adoption and appointing CASA. Ms. Lamar testified that goals were changed due to circumstances including Mrs. Valle's history of mental illness, her noncompliance in taking her medication, and both parents' failure to complete tasks under the plans of care for Obed and Renee'. Ms. Lamar states that she informed Mr. Valle of the goal change and he indicated that he understood and would get a lawyer.

Ms. Lamar further testified that she has observed the Valle family since 1992. She is of the opinion that neither Mr. or Mrs. Valle fulfilled their responsibilities under the plan of care and believes that the conditions that led to the removal of Obed and Renee' still exist and are unlikely to be remedied. Ms. Lamar states that there where no efforts on the part of DCS to work with Mr. Valle on his language barrier.

At the conclusion of proof the judge asked Mrs. Valle if she would like to testify when he noticed that she was holding up her hand. Mrs. Valle said that she would, and her testimony followed. Mrs. Valle stated that she believed "that her human and civil rights have been violated because –"[3] Mrs. Valle testified that she is currently being closely monitored by her physician, Dr. Roa, and after being observed will be given a prescription. Mrs. Valle further testified that she had family members that had an interest in the children and have expressed to her that they would be willing to assist her in child care and in providing for the children. Mrs. Valle stated that she was interested in supporting her children and in maintaining a close relationship with them. Mrs. Valle testified that she was willing to attend parenting classes and to see that her

---

[3] At this point the record reflects that Mrs. Valle was interrupted by the court, and we are unable to ascertain the specific violation claimed by Mrs. Valle.

4

medical problems were treated.

The trial court ruled from the bench that the parental rights would be terminated. The order terminating parental rights was entered June 24, 1998, and provides in pertinent part:

FINDINGS OF FACT

1. That Obed Valle has been removed from the custody of the Respondents by order of this Court for more than two years, and that Renee' Valle has been removed from the custody of the Respondents by order of this Court for more than one year.

2. The Respondents have for a period of four (4) consecutive months immediately preceding the filing of this Petition, abandoned said children in that they have failed to visit and willfully failed to support or make reasonable payments toward the support of said children.

3. The respondent, Cynthia Valle, failed to seek and successfully complete a treatment program to address her mental illness issues and stabilize on her medication, failed to complete parenting classes, and failed to maintain contact with the Department of Children's Services as required in the ratified Permanency Plan.

4. The respondent, Gilberto Valle, failed to maintain contact with the Department of Children's Services, failed to complete parenting classes, and failed to attend and participate in an Alcoholics Anonymous program as required in the ratified Permanency Plan.

5. Any conclusion of law hereafter recited which should be deemed a finding of fact is found to be true in all respects and is hereby adopted as such.

Based on the foregoing findings of fact, the Court concludes as follows:

CONCLUSIONS OF LAW

1. This Court has jurisdiction over this proceeding pursuant to TCA. § § 36-1-113(a) and 37-1-104.

2. The Respondents have abandoned the children as defined in TCA § 36-1-102(A).

3. The Respondents have substantially failed to comply with the statement of responsibilities in the ratified Permanency Plan as defined in TCA § 37-2-403.

4. Said children have been removed from the custody of the Respondents by the Court for at least six (6) months and the conditions which led to the removal or other conditions which in all reasonable probability would cause said children to be subject to further abuse or neglect and which, therefore, prevent said children's return to the Respondents' care still persist and there is little likelihood that the conditions will be remedied at an early date so that said children can be returned to the Respondents in the near future. Further, the continuation of a relationship with the Respondents, greatly diminishes said children's chances of early integration into a stable and permanent home.

5. In accordance with TCA § 36-1-113 (c)(2), the termination of the Respondents' parental rights is in the

5

best interest of said children.

6. In accordance with TCA 36-1-113(c)(1), there is clear and convincing evidence to support the termination of the Respondents' parental rights regarding said children.

7. Any finding of fact which should be deemed a conclusion fo law is hereby adopted as such.

The Valle's have appealed the juvenile court's ruling and present in their brief the following issues:

I. Whether Article I, § 8 of the Tennessee Constitution precludes non-attorney judges from presiding over termination of parental rights cases.

II. Whether Article VI, § 4 of the Tennessee Constitution requires that the termination of parental rights case be heard by an elected judge.

III. Whether T.C.A. § 17-2-118(f)(2) contravenes Article VI, § 4 of the Tennessee Constitution.

IV. Whether the due process clause of the Fourteenth Amendment to the United States Constitution and Rule 39 of the Tennessee Rules of Juvenile Procedure required the appointment of counsel for appellant Gilberto Valle.

V. Whether due process requires that a translator be provided a non-english speaking parent in a termination of parental rights case.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

In appellants' issues I and II they contend that Article I, § 8 and Article VI, § 4 preclude a non-attorney judge from presiding over termination of parental rights cases and that such actions are to be heard by an elected judge. In issue III Appellants contend that T.C.A. §§ 17-2-109(c) and 17-2-118(f)(2), regarding the appointment of special and substitute judges, are unconstitutional. In issues I, II, and III the Appellants raise constitutional issues that were not raised at trial.

Generally, issues not raised at trial may not be raised for the first time on appeal." *State Dept. of Human Services v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996) (citing *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)). *See also Chadwell v. Knox County*, 980 S.W.2d 378, 384 (Tenn. Ct. App. 1998) (appellate court declines to consider a theory relating to the Tennessee Solid Waste Disposal Act, (T.C.A. § 68-211-101), as the theory was not raised at trial); *and Presley v. Hanks*, 782 S.W.2d 482, 490 (Tenn. Ct. App. 1989) ( appellate court declines to construe the term "legal issue").

In *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn. 1983), the Court said:

> We express no opinion respecting the constitutional validity or invalidity of T.C.A., Sec. 63-1234, and hold that the Court of Appeals erred in considering that issue. It was error for that court to adjudicate the constitutional issue because that question had not been raised at any point in the proceedings in the trial court.
>
> It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity of any discussion. (Citations omitted).

*Id.* At 929.

The record is silent concerning Judge Blancett's appointment, and this Court is called upon to guess the source of his appointment. Our Supreme Court noted in *Lawrence v. Stanford, supra,* "when the validity of [the statute] was not raised in the trial court no opportunity was afforded for the introduction of evidence which might be material and pertinent in considering the validity of the statute." 655 S.W.2d at 929. Certainly, this situation prevails in this case, and we decline to consider this issue. Since the case is to be remanded, the deficiency can be remedied.

The appellants next raise the issue whether the due process clause of the Fourteenth Amendment to the United States Constitution and Rule 39 of the Tennessee Rules of Juvenile Procedure required the appointment of counsel for appellant Gilberto Valle.

Under the United States Constitution, parents do not have an absolute right to counsel in termination of parental rights proceedings. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). The *Lassiter* Court, however, recognizing that the requirements of due process vary from case to case, determined that the nature of the proceeding and the interests involved are determinative factors in what due process requires. 101 S.Ct. at 2158. In *State ex rel. T.H. by H. H. v. Min*, 802 S.W.2d 625 (Tenn. Ct. App. 1990), the parents of a minor child filed a complaint and petition for writ of habeas corpus, against the Commissioner of the Department of Human Services, seeking a declaratory judgment that their due process rights were violated by failure of the juvenile court to appoint counsel to represent them at various custody hearings. This Court noted that the issue on appeal is whether the due process provisions of the state and/or federal constitutions require the juvenile court to appoint counsel for the parents in a proceeding in which the parents face the possibility of losing custody of the child. *Id.* at 625. The Court noted that it is well established "that the parental right to raise one's children is a fundamental

7

liberty protected by the due process clause of the Fourteenth Amendment." *Id.* at 626. The Court further noted that the *Lassiter* Court and the Circuit Court of Appeals in *Davis v. Page*, 714 F.2d 512 (5th Cir. 1984) listed several factors to determine whether an indigent parent in a hearing affecting parental rights may be entitled to the assistance of counsel as a matter of due process. The Court stated:

> To help assess the risk of an unfair proceeding resulting in an erroneous decision, the courts in *Lassiter* and *Davis* have listed several factors that bear on the question. They include: (1) whether expert medical and/or psychiatric testimony is presented at the hearing; (2) whether the parents have had uncommon difficulty in dealing with life and life situations; (3) whether the parents are thrust into a distressing and disorienting situation at the hearing; (4) the difficulty and complexity of the issues and procedures; (5) the possibility of criminal self-incrimination; (6) the educational background of the parents; and (7) the permanency of potential deprivation of the child in question. *Lassiter*, 101 S.Ct. at 2161-2163; *Davis*, 714 F.2d at 516-517.

*Id.* at 627.

Rule 39 of the Tennessee Rules of Juvenile Procedure prescribe the procedures for termination of parental rights cases. Rule 39(f) provides in pertinent part:

> (f) Adjudicatory Hearing on Termination
>
> (1) The court shall conduct an adjudicatory hearing to determine the issues raised by the petition and by any answer(s) filed. Notice of the hearing shall be provided in the summons.
>
> (2) At the beginning of the hearing, any party who appears without an attorney shall be informed of the right to an attorney, and in the case of an indigent respondent, the court shall consider the facts and circumstances alleged and make a determination as to whether an attorney should be appointed.
>
> *            *            *

In *State, Dept. of Human Services v. Taylor*, 1997 WL 122242 (Tenn. Ct. App.), this Court held that the procedures of Rule 39(f) (2) concerning the right to have an attorney, appointed or otherwise, are mandatory. In so holding, the Court said:

> Our present Rules of Juvenile Procedure became effective July 1, 1984. Since these rules postdate *Lassiter*, it would appear that in order to insure that the conditions therein stated are properly considered, the Tennessee Supreme Court and the General Assembly, by the adoption of the Rules of Juvenile Procedure, provide minimum requirements which the trial court must follow when a parent appears at a termination hearing without an attorney.

*Id.* at *2. From our review of the record, it appears that the mandate of Rule 39 was not met. Although at the April 15, 1998 hearing, the court appointed an *attorney ad litem* to represent Mrs. Valle because of her mental condition, the record indicates some confusion as to the duties expected of the appointee. It appears that the *attorney ad*

8

*litem* did not assume a strict adversary stance but acted more in the nature of a **guardian ad litem**. In any event, Mr. Valle was without any representation, and both Mr. and Mrs. Valle should have been accorded the protection of Rule 39. Failure to be provided this protection results in reversible error.

Appellants assert in the last issue that due process required that Mr. Valle be provided an interpreter. Tenn.R.Civ.P. 54.04 (3) provides:

> (3) The court may appoint an interpreter of its own selection and may fix reasonable compensation. The compensation shall be paid out of funds provided by law or by one or more of the parties as the court may direct, and may be taxed ultimately as costs in the discretion of the court.

Tenn.R.Crim.P. 28 provides essentially the same except as to the taxing of costs. In **State v. Thien Duc Le,** 743 S.W.2d 199 (Tenn. Crim. App. 1987), the Court considered the alleged error of the trial court in not appointing a Vietnamese language interpreter. Finding in that case that there was no indication of a language barrier, the Court held that the trial court did not err in failing to appoint an interpreter. However, the Court said:

> it is the duty of the court to provide the necessary means for the defendant to understand the nature of the charges against him, the testimony of the witnesses, and to communicate to the court. Failure to do so would be a violation of one's constitutional right to be heard, to know the nature and cause of the accusation, and to be confronted by the witnesses.(Citations omitted)

*Id.* at 202.

Generally, the appointment of an interpreter is in the discretion of the court before which a cause is on trial. 88 C.J.S. *Trial*, § 42, p. 101 (1995).

While we have found no case dealing with the precise issue before us, we generally recognize that the party litigant is entitled to be present in all stages of the actual trial of the case. **Warren v. Warren**, 731 S.W.2d 908, 909 (Tenn. Ct. App. 1985). Thus, a party must be in a position to understand the nature of the case and the testimony of the witnesses. When this question presents itself, the trial court must determine whether an interpreter is necessary, based upon the nature and extent of any alleged disability of the parties. Considering the drastic nature of a termination of parental rights case, it is particularly incumbent upon the trial court to be careful in exercising discretion for the appointment of an interpreter. The record in this case reflects that no inquiry was made concerning the need for an interpreter primarily, we presume, because the Valles did not have counsel acting in their behalf. On remand, the trial court can proceed as required to protect the rights of the parties.

We should also note that the trial court's ruling was, in part, based on

9

abandonment of the children as defined in T.C.A. § 36-1-102 (1)(a). In **Tennessee Baptist Children's Home, Inc. v. Swanson**, 2 S.W.3d 180 (Tenn. 1999), released by the Supreme Court in October 1999, the Court held that the statutory definition of "willfully failed to support" and "willfully failed to make reasonable payments toward the support of the children" are unconstitutional. The Court said:

> Since the statutory definitions of "willfully failed to support" and "willfully failed to make reasonable payment toward such child support" in effect create an irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment, irrespective of whether that failure was intentional, we hold that those definitions are unconstitutional. The statutory definitions simply do not allow for the type of individualized decision-making which must take place when a fundamental constitutional right is at stake. Therefore, they impermissibly infringe upon a parent's right to the care and custody of his or her children.

*Id.* at 188. The Court directed that until the definitions were amended by the legislature, the definition in effect under prior law shall be applied. *Id.* at 189. The Court noted that the definition of "abandoned child" under prior law, as it existed in 1994, included an "element of intent both in failures to visit and failures to support." *Id.* at 189 & n. 14 (citing T.C.A. § 36-1-102(1)(A)(i) (Supp. 1994)).

Accordingly, the order of the trial court is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal are assessed to the appellee, Court Appointed Special Advocates.

_____
**W. FRANK CRAWFORD, P.J., W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

10