IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2000

## IN RE:  K.D.D.  (DOB 9/20/96) and B.T.D. (DOB 1/13/98)

**Appeal from the Juvenile Court for Wilson County**
**No. 2007, 2008     Barry Tatum, Judge**

---

**No. M2000-01554-COA-R3-JV - Filed March 7, 2001**

---

The Juvenile Court terminated the parental rights of a mother to her young children.  The mother appealed, arguing that she was not given an adequate opportunity to defend those rights. We find that she voluntarily failed to avail herself of the opportunities that were offered to her, and we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, joined.

Dean Robinson and S. Nixon Pressley, Mt. Juliet, Tennessee, for the appellant, A.D.

Jo Ann Aulds, Lebanon, Tennessee, for the appellees, J.D. and J.L.D.

### OPINION

### I.  A CHANGE OF CUSTODY

A.D. is the mother of the two little girls, K.D.D. and B.T.D., who are  at the center of the termination proceedings under review.  She and the father, M.D., never married, and M.D. apparently had almost no involvement in the lives of his children.  He is not contesting the termination of his parental rights in this appeal.

Ms. D. has had continuing problems with drug abuse.  In September of 1998, she left her two young children with her parents, J.D. and J.L.D., in order to participate in a residential drug treatment program.  According to the Petition for Custody subsequently filed in the Juvenile Court of Wilson County, by Mr. and Mrs. D., the mother was told on October 28, 1998 to leave the halfway house where she resided.  She stayed with her parents for several days after that.  On November 5, 1998,

A.D. took her children to day care, and her parents did not hear from her again until they received a phone call on November 18.

In their petition, the maternal grandparents stated that they did not know the whereabouts of their daughter or of M.D. They asked the court to grant them temporary custody of their grandchildren, with permanent custody to be awarded after service by publication was obtained on the mother and father. The trial court granted the temporary custody order, and ordered service by publication. After notices had run in the newspapers for four weeks, the maternal grandparents filed a Motion for Final Default Judgment.

Neither A.D. nor M.D. filed an answer to the motion, but they both appeared in court on the day of the hearing, and agreed that full custody of the children should be granted to the petitioners. The court's order granting the petition was entered on March 11, 1999. It required both parents to pay child support to the maternal grandparents, equal to 32% of their net incomes. The court established visitation rights for the parents, but enjoined them from attempting to interfere with the custody exercised by the petitioners. A.D. had just entered a new drug rehabilitation program, and the order provided for a review on September 7, 1999, to determine her success "regarding her rehabilitation program as it relates to her parental rights." Ms. D. dropped out of the rehabilitation program after three days.

## II. TERMINATION OF PARENTAL RIGHTS

On August 30, 1999, the grandparents filed a Petition for Termination of Parental Rights, and a notice that the review of the custody proceedings would take place on September 3. The grounds stated for termination of the mother's parental rights included willful failure to make reasonable payments towards the support of the children, and willful failure to exercise visitation with the children (other than token visitation). *See* Tenn. Code. Ann. § 36-1-102. The petitioners also claimed that their daughter had failed to complete a rehabilitation program, to obtain steady employment, or to acquire appropriate housing. She was served with the Notice of Review of Proceedings in the Wilson County Jail, where she was incarcerated at that time.

During the September 3 hearing, the court heard testimony by A.D. and by the petitioners, and concluded that Ms. D. had not made progress with her rehabilitation so as to affect its prior custody order. Ms. D. was served in the courtroom with the Petition for Termination of Parental Rights. The court advised her as to the gravity of the petition, informed her that she was entitled to apply for court-appointed counsel to represent her in regard to termination proceeding, and gave her an application form for appointment of counsel. Although she expressed a desire for court-appointed representation, Ms. D. left the courthouse without ever completing the application for appointment of counsel.

A.D. did not file an answer to the Petition for Termination of her Parental Rights, nor to the subsequently filed Motion for Final Default Judgment on that Petition. The hearing on the petition and motion was conducted on November 19, 1999. Ms. D. was again in the Wilson County Jail, but

the trial court ordered that she be brought to the courtroom so she could attend the hearing. The court again heard testimony from both A.D. and from her mother. No court reporter was present, so no transcript of the proceedings is available. However, the appellant has submitted a Statement of the Evidence under Rule 24(c), Tenn. R. App. P. At the conclusion of the hearing, the court granted the Petition for Termination.

The court's order included specific findings of fact, including findings that A.D. "has willfully and knowingly failed to maintain contact with these children, has willfully and knowingly failed to provide support for such children, and has willfully and knowingly failed to establish personal stability in her life that would be suitable in nurturing these children."

The trial court subsequently appointed an attorney, Dean Robinson, to represent A.D. Mr. Robinson filed a Motion for New Trial, in which he argued among other things that Ms. D. did not have effective assistance of counsel to protect her constitutional rights during the hearing on the Petition for Termination. Following a hearing on February 4, 2000, the court denied the Motion for New Trial. Mr. Robinson then filed a Notice of Appeal to this Court, followed by a motion in the trial court to vacate the judgment. The court denied the Motion to Vacate, reasoning that the earlier filed Notice of Appeal had deprived it of jurisdiction.

### III. DUE PROCESS

The rights of parents to the custody and upbringing of their own children is a fundamental liberty that is protected by both the United States and Tennessee Constitutions. *In Re Swanson*, 2 S.W.3d 180 (Tenn. 1999); *Stanley v. Illinois*, 405 U.S. 645 (1972); *Meyer v. Nebraska*, 262 U.S. 390 (1923). Yet a parent's rights are not absolute, and may be terminated on statutory grounds such as abandonment or abuse, when required to protect the best interests of the children. The courts must jealously protect the due process rights of a parent whose rights are at issue in a termination proceeding, and any grounds for termination be proven on the basis of clear and convincing evidence. Tenn. Code. Ann. § 36-1-113.

The primary grounds upon which the appellant challenges the termination of her rights involve due process. Ms. D. claims that she was not afforded effective assistance of counsel during the proceeding, and therefore that she did not have "an adequate opportunity to present evidence, cross examine witnesses, effectively argue the issues and effectively present a defense to the action filed against her." She also claimed that the court erred in failing to obtain her signature on a written statement refusing the court's offer to appoint an attorney on her behalf.

Because of the importance of the rights involved, a parent facing a termination proceeding may be entitled to the assistance of appointed counsel as a matter of due process. *State ex rel T.H. by H.H. v. Min*, 802 S.W.2d 625 (Tenn. Ct. App. 1990). Such a right is not absolute, however, because the requirements of due process vary from case to case. *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981).

In the present case, the court's willingness to provide the appellant with counsel is not in question. It appears to us that Ms. D. waived her right to an attorney, and thus cannot rely upon lack of representation as a defense to the judgment against her. The trial court filed a response to the appellant's Tenn. R. App. P. 24 statement and to the appellee's objections to that statement, setting out the effort the judge made to secure Ms. D.'s agreement to appointment of counsel on her behalf:

> Upon being served with the Petition for Termination of Parental Rights, this Court advised her of the gravity of the Petition, and what was being pursued. This Court advised her of the right to be represented by counsel pursuant to Rule 13 of the Tennessee Supreme Court Rules. This court strongly advised her of the need to have counsel and instructed the Defendant/Appellant (Mother) about how to apply and advised her that her application would be acted upon that morning if she would complete and submit the application for appointed counsel. This Court physically handed her the application and supplied her with a pen for completion. The Defendant/Appellant (Mother) indicated to this court that she desired Counsel and would fill out the application and submit it later that same morning. After this exchange and after the Defendant/Appellant (Mother) had exited the courtroom, another very capable attorney who was present volunteered and agreed to accept the appointment of counsel.

Ms. D. does not dispute this account, but adds in her Statement of the Evidence and in her appellate brief that immediately following the review hearing she was approached by appellees' counsel in the hallway outside the courtroom, who told her that someone was interested in representing her in the case. She stated that she felt intimidated by appellees' counsel and believing that she would not prevail at the final hearing, exited the courthouse without completing the application.

Appellant argues that she was thrust into a distressing and disorienting situation that day because she was brought to the hearing from the jail after having been incarcerated there for two and one-half weeks. We note, however, that the termination hearing was conducted more than two months later, and that Ms. D. could have submitted the application for assistance of counsel during the interval, or she could have consulted with a lawyer of her own choosing if she wished.

While the appellant complains about a procedural error allegedly committed by the trial court, she does not allege any additional facts which might cast any doubts upon the grounds for the termination of her parental rights, and she does not suggest that she is likely to become qualified to perform her parental responsibilities any time in the near future. Even if we believed that the presence of an attorney would have resulted in a different outcome, and that the trial court erred in ruling as it did, we note that under Rule 36 of the Rules of Appellate Procedure, this court is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

As the appellant states, the Supreme Court has set out a procedure to be followed for waiver of appointment of counsel in certain types of cases, including one involving termination of parental rights:

> If a competent defendant refuses to accept the services of appointed counsel, such refusal shall be written and signed by the defendant in the presence of the court, which shall acknowledge thereon the signature of the defendant and make the written refusal a part of the record in the case.

Tenn. Sup. Ct. R. 13, § 1(h).

However, Section (j) of the same rule states that the failure of any court to follow the provisions of the rule shall not constitute grounds for relief from judgment. It appears to us that the requirement of a written waiver serves both to protect a party's rights, and to ensure the integrity of the process. In the present case, there is no dispute that the court made every effort to persuade Ms. D. to accept its offer of representation, and that she ultimately declined that offer, even though she did not sign a written waiver. We also think that without Section (j) or some analogous rule of law, a party that was entitled to appointed counsel might be able to prevent an enforceable judgment being rendered against her, by refusing both to accept appointed counsel, and to sign the Rule 13 waiver.

## IV. ABANDONMENT

As we stated above, the trial court found conduct by Ms. D. that amounted to abandonment of her children. Findings of fact by a trial court are presumed on appeal to be correct, unless the evidence preponderates otherwise. Rule 13(d), Tenn. R. App. P. Because there is no transcript of the evidence, our review must rely upon the appellant's Statement of the Evidence and the appellee's objections to that statement.

In their respective statements, the parties presented slightly different accounts of Ms. D.'s motivations in absenting herself from the lives of her children. According to the appellant's statement, the appellees' counsel alleged that Ms. D. "had left the state during the course of the proceedings to pursue her own life without regard for her children." The appellees stated that appellant's position was that she "had taken the opportunity to remove herself from a drug and alcohol environment in Lebanon during the weekdays and returned to Lebanon only on the weekends to visit friends."

Under Rule 24(e), Tenn. R. App. P., differences between the respective statements of the parties are settled by the trial court, whose determination is conclusive. The trial court's response indicates that there was some truth to both statements:

> "[Ms. D.] stated that 'she had to choose between herself and her children' and that she chose herself. She stated that in order to save herself, she 'had to get out of

Lebanon and away from the drug environment she was in.' She further stated that she understood that this meant giving up the fight for her children but she knew that if she did not do so, she would not be able to ever be there for her children in any beneficial capacity."

We note that the legal definition of abandonment involves the element of willfulness or choice. *See In Re Swanson*, 2 S.W.3d 180 (Tenn. 1999); *In Re Menard*, 29 S.W.3d 870 (Tenn. Ct. App. 2000). The above quoted passage confirms that the appellant has admitted making such a choice. The evidence does not preponderate against the trial court's conclusion that the appellant's conduct meets the statutory definition of abandonment, Tenn. Code. Ann. § 36-1-102(1)(A), and we affirm its judgment.

## V.

The judgment of the trial court is affirmed. Remand this cause to the Juvenile Court of Wilson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, A.D.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.