IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS FEBRUARY 22, 2008

IN THE MATTER OF:
M.R. (d/o/b 10/26/99) and C.R. (d/o/b 9/27/03),
Children Under 18 years of age

CHARLIE ROBERTSON v. TRACY MAYES

Direct Appeal from the Juvenile Court for Davidson County
Nos. 9919-49746, 2005-002580     Betty Adams Green, Judge

No. M2007-02532-COA-R3-JV - Filed: June 3, 2008

This appeal involves a petition for custody of two minor children. The juvenile court named the father primary residential parent and the mother alternate residential parent. The mother appeals; we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jennifer L. Evans, Springfield, TN, for Appellant

No appearance by Appellee

**OPINION**

# I. FACTS & PROCEDURAL HISTORY

On September 21, 2005, Charlie Robertson ("Father"), acting pro se, filed a "Petition to Change Custody in a Parentage Case" in the juvenile court of Davidson County, seeking custody of his daughters, Monicha Robertson and Chamiya Robertson.[1] Monicha was seven years old at the time, and Chamiya was nearly two years old. According to Father's petition, the children were born out of wedlock to Tracy Mayes ("Mother"), but no custody order had been entered regarding the children. Father alleged that Mother was using drugs, leaving the children at home alone, failing to change Chamiya's diapers regularly, and failing to provide the children with a proper diet.

On September 29, 2005, the juvenile court referee held a hearing and ordered that a Court Appointed Special Advocate (CASA) representative be appointed to act on behalf of the children. The referee also appointed a guardian ad litem for the children. Father filed a motion seeking to have an attorney appointed to represent him. At a hearing on November 11, 2005, the juvenile court appointed an attorney for Mother, but Father continued to proceed pro se.

On January 13, 2006, the referee held a hearing on the petition to change custody. We do not have a transcript of the hearing, but the referee issued written findings stating that he had heard "evidence from the various witnesses," and that the following individuals were present in court: Father, Mother, Mother's attorney, Mother's boyfriend, Father's mother, three other individual witnesses, two CASA representatives, a social worker, and the guardian ad litem. The referee took the matter under advisement and scheduled another hearing for two weeks later. The referee also ordered the guardian ad litem to obtain the police record of Mother's boyfriend, and ordered that Father be allowed visitation with the children on weekends pending the next hearing.

The second hearing was held on January 27, 2006. The record does not contain a transcript of the hearing, but the referee made the following findings:

> The court heard from the parents, attorney [for Mother,] and the Guardian ad Litem, reviewed the submitted information regarding convictions against the father and the mother's live-in boyfriend and announced the following findings and ORDERS:
> 1)    The court finds that the father has established that a substantial and material change in circumstances does exist from when the court previously addressed the custody situation of the children. The court finds that the mother did not always properly care for the children and at times left the children home alone; in particular, an incident on September

---

[1] The record before us does not include any information regarding the prior proceedings in the juvenile court involving these children. The appellant does not dispute that some proceedings had taken place and that Father was ordered to pay child support.

19, 2005, led to involvement of the Child Protective Services section of the Tennessee Department of Children's Services.

2) Based on the testimony presented, the court also finds that the mother is not currently able to financially support her children. She is unemployed and is relying on government assistance plus a relatively small amount of child support to care for the children. There is also a boyfriend of the mother, Timothy Cartwright, that provides some financial assistance to the mother.

3) The live-in boyfriend of the mother, Timothy Cartwright, also causes this court concern in regard to the welfare of the children. Mr. Cartwright was convicted in August 1991 of 2nd degree Murder for which he received a 25 year sentence and was also convicted of a separate offense of Aggravated Robbery. Mr. Cartwright had previous felony convictions for property offenses. Upon Timothy Cartwright being released from prison in April 2005, after having served approximately 16 years in prison, [Mother] took him directly into her home; she described him as "her boyfriend from prison." The mother did not know Mr. Cartwright prior to his incarceration. [Mother]'s three young daughters[2] were in the home at the time Mr. Cartwright came to stay. Mr. Cartwright remains on parole for the murder conviction.

4) The father also had a recent conviction which caused the court concern. He was charged with Statutory Rape in January 2003. Mr. Robertson was convicted of a lesser misdemeanor offense of Contributing to the Delinquency of a Minor and was placed on probation on January 29, 2003.

5) Another concern of the court was the mother's appearance of deception. She was asked, in several different ways, whether she had recently moved. Only after repeated questioning from the court did the mother finally admit that she either had moved or was going to move soon. The impression this left with the court was one of instability in the living situation of the mother and of a lack of faith in her credibility as a witness.

6) The court also considered the report of CASA in its determination of the proper disposition in this case. A copy of CASA's report was submitted to the court.

---

[2] According to the CASA report, the children also have a stepsister.

7)    The court, as a result of the above findings, designates the father as the Primary Residential Parent; the mother is the Alternate Residential Parent. . . .

. . .

Mother filed a request for a rehearing before the juvenile court judge.

Following numerous continuances, the juvenile court judge held a final hearing on Father's petition for custody on March 1, 2007. The final order provides, in relevant part:

Present at court were Charlie Robertson, father; Karl Warden, attorney for the father; Tracey Mayes, mother; Jennifer Evans, attorney for the mother; Kristina Casterline and Joseph Manners, CASA; and Rob Robinson, Guardian ad Litem. The court heard from the witnesses presented and reviewed the submitted materials and now announces the following findings and ORDERS:

1)    The court finds that the mother did not always properly care for the children and at times left the children home alone. In particular, an incident on September 19, 2005, led to involvement of the Child Protective Services section of the Tennessee Department of Children's Services. Although the exact number of hours the children were left unsupervised is disputed, it is clear to the court that the children were not properly supervised for a period of time which led to their temporary removal from the mother's home. The court also finds that the mother made poor choices in regard to living arrangements when she invited a person, Timothy Cartwright, into the home with the children upon Mr. Cartwright's parole from prison. Mr. Cartwright had previous convictions for Aggravated Robbery and Second degree Murder. The mother continued to live with Mr. Cartwright even after [the juvenile court referee] strongly suggested at the hearing on January 27, 2006 that the arrangement was not appropriate, and custody was changed to the father. Mr. Cartwright was arrested on May 5, 2006 for separate charges of murder of a 9 year old boy and aggravated robbery of a nursing home; the nursing home robbery is alleged to have occurred in December 2005 when these children were still living with the mother and Mr. Cartwright, and the murder of the 9 year [old] is alleged to have occurred on March 21, 2006.

2)    Based on the testimony presented, the court also finds that the mother is not financially stable. She is unemployed and is relying on a relatively small amount of government assistance for her income. While this fact alone might not be cause for a custody change, it causes this court concern about the mother's ability to meet the financial needs of the children.

3)    This court finds, based on the testimony and evidence presented, that the father established that there was a substantial and material change in circumstances in the children's lives since previous custody determinations. The court, as a result of the above findings, designates the father

-4-

as the Primary Residential Parent; the mother is the Alternate
Residential Parent. . . .

. . .

Mother subsequently filed a notice of appeal to the circuit court, and the circuit court transferred the case to this Court.

## II.  ISSUES PRESENTED

Mother presents the following issues, as we perceive them, for review:

1.      Whether the trial court violated Mother's constitutional right to due process.
2.      Whether the trial court erred in finding a material change in circumstances and granting the petition to change custody without a prior order of parentage as to the minor child, Chamiya Robertson.

For the following reasons, we affirm the decision of the juvenile court.

## III.  STANDARD OF REVIEW

The appellant has a duty to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues that form the basis of the appeal. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005).  A recitation of facts and argument in an appellate brief does not constitute evidence and cannot be considered in lieu of a verbatim transcript or statement of the evidence and proceedings.  *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990).  We cannot simply assume that the facts as recited are true.  *In re Conservatorship of Chadwick*, No. E2006-02544-COA-R3-CV, 2008 WL 803133, at *1 (Tenn. Ct. App. Mar. 27, 2008).  "Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue."  *State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993).

In the case before us, the record does not contain a transcript or statement of the evidence. Therefore, we may only reverse the trial court's decision if we find, based on the "technical" record before us, that the trial court committed an error of law.  *See In re Conservatorship of Chadwick*, 2008 WL 803133, at *2.  We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness.  *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.  DISCUSSION

### A. Due Process

Mother argues that she was denied due process because she did not have a "full and fair hearing." She first claims that the trial court proceedings were unfair because "several court hearings were conducted prior to the Mother being appointed legal counsel." Father filed his pro se petition for custody on September 21, 2005. From our review of the record, it appears that one hearing was held before counsel was appointed for Mother on September 29, and the juvenile court referee ordered that a CASA representative and guardian ad litem be appointed for the children. The case was continued, and at the next hearing on November 11, an attorney was appointed for Mother.

"With the exception of certain proceedings involving the termination of parental rights, it is now well-settled that there is no absolute right to counsel in a civil trial."[3] *Bell v. Todd*, 206 S.W.3d 86, 92 (Tenn. Ct. App. 2005) (citing *Knight v. Knight*, 11 S.W.3d 898, 900 (Tenn. Ct. App. 1999); *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989)). "In a particular case, however, an indigent parent facing a hearing affecting parental rights *may* be entitled to the assistance of counsel as a matter of due process." *State ex rel. T.H. by H.H. v. Min*, 802 S.W.2d 625, 626 (Tenn. Ct. App. 1990). The requirements of due process vary from case to case. *In re Valle*, 31 S.W.3d 566, 571 (Tenn. Ct. App. 2000). Due process is a flexible concept, which "calls for such procedural protections as the particular situation demands." *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) (citing *Wilson v. Wilson*, 984 S.W.2d 898, 902 (Tenn. 1998); *Phillips v. State Bd. of Regents of State Univ. & Comty. Coll. Sys.*, 863 S.W.2d 45, 50 (Tenn. 1993)). The elements to be examined in deciding what process is due include the parent's interest, the state's interest, and the risk that the failure to appoint counsel will lead to an erroneous decision. *Min*, 802 S.W.2d at 626 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

In *State ex rel. T.H. by H.H. v. Min*, for example, the Court of Appeals held that the parents involved in that case were denied due process by the juvenile court's failure to appoint counsel to represent them at various custody hearings that resulted in a finding that their child was dependent and neglected. 802 S.W.2d at 627. The Court recognized that parents do not have "an absolute right to counsel" in proceedings affecting parental rights, but the circumstances of that particular case required that the parents be provided counsel.[4] *Id.* at 626-27.

---

[3] Rule 13 of the Tennessee Supreme Court Rules and Rule 39(e)(2) of the Tennessee Rules of Juvenile Procedure now address the appointment of counsel in parental termination proceedings.

[4] The Court identified various factors to consider when assessing the risk of an unfair proceeding and erroneous decision if counsel is not provided, including:

> (1) whether expert medical and/or psychiatric testimony is presented at the hearing; (2) whether the parents have had uncommon difficulty in dealing with life and life situations; (3) whether the parents are thrust into a distressing and disorienting situation at the hearing; (4) the difficulty and complexity of the issues and procedures; (5) the possibility of criminal self-incrimination; (6) the educational background of the parents; and (7) the permanency of potential deprivation of the

(continued...)

In the case before us, there is nothing in the record to indicate that Mother ever requested appointed counsel; however, the juvenile court *did* appoint counsel for Mother at the second hearing. We do not have a transcript of the initial hearing, but the orders entered thereafter only addressed the appointment of a guardian ad litem and CASA worker for the children. No significant action was taken at the first hearing that would be likely to lead to an erroneous decision. Mother was represented at the other hearings before the referee, including when the witnesses testified, and more importantly, she was represented throughout the rehearing before the juvenile court judge. *See **In re S.Y.***, 121 S.W.3d 358, 365-66 (Tenn. Ct. App. 2003) (holding that any violation of due process by the juvenile court's failure to appoint an attorney at a dependency and neglect proceeding was fully remedied by the fact that the appellant had full assistance of counsel at the subsequent parental termination proceeding). Due process "calls for such procedural protections as the particular situation demands," ***Keisling***, 92 S.W.3d at 377, and we find that the juvenile court provided sufficient procedural protections to Mother in this case.

Next, Mother argues that her "due process right to have timely and adequate notice [of the allegations against her]" was violated. Father's original petition for custody alleged that he should be granted custody of the children because Mother was using drugs, leaving the children at home alone, failing to change their diapers, and neglecting the children by failing to provide them with a proper diet. Mother argues that Father could not then introduce "evidence of additional allegations not set forth in the petition," such as evidence about her boyfriend's criminal record. The juvenile court referee ordered the guardian ad litem to obtain the police record of Mother's boyfriend on January 23, 2006, following a hearing at which the boyfriend appeared as a witness. The referee's findings entered on February 1, 2006, recount Mother's testimony about "her boyfriend from prison," and the juvenile court judge heard additional testimony about the boyfriend at the final hearing on March 15, 2007. In ***Keisling v. Keisling***, 92 S.W.3d 374, 380 (Tenn. 2002), the Supreme Court held that a parent's right to due process was violated when the pleadings did not give her notice that *custody* would be an issue in the case, and the trial court changed custody after the hearing. However, that is not the situation here. Mother clearly knew that Father was seeking custody of the children. We find no merit in Mother's argument that she was unaware that the court would consider the situation involving her live-in boyfriend, which is relevant to her fitness as a parent. On appeal, Mother argues that Father should have amended his pleadings pursuant to Rule 15.01 and Rule 15.02 of the Tennessee Rules of Civil Procedure. However, "in the absence of a transcript from the hearing or a statement of facts, we must conclude that the parties presented the issue . . . to the court based on the implied consent of the parties pursuant to Tenn. R. Civ. P. 15.02."[5] ***England v. England***, No. E2005-00382-COA-R3-CV, 2005 WL 3115867, at *4 (Tenn. Ct. App. Nov. 22, 2005).

---

[4](...continued)
            child in question.

***Min***, 802 S.W.2d at 627 (citing *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 2161-63, 68 L.Ed.2d 640 (1981); *Davis v. Page*, 714 F.2d 512, 516-17 (5th Cir. 1984)).

[5] Pursuant to Rule 1(b) of the Rules of Juvenile Procedure, the Tennessee Rules of Civil Procedure governed this child custody proceeding.

The determination of whether there was implied consent for the purposes of Rule 15.02 rests in the discretion of the trial judge, and we will reverse only upon a finding of abuse of discretion. *Id.* There was no abuse of discretion in this case. In fact, one of the statutory factors to be considered in custody determinations is "[t]he character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child." Tenn. Code Ann. § 36-6-106(a)(9). Mother cites no authority for the notion that a trial court can only consider each of the statutory factors if the parent petitioning for custody addressed that factor in his or her petition for custody.

## B.   Prior Orders

Next, Mother argues that the trial court erred in granting custody to Father because he is not the legal parent of one of the children. According to Mother's brief, an order of parentage was previously entered by the juvenile court, but it only addressed one child. There is nothing in the technical record to support Mother's argument, or to suggest that Mother raised this issue in the trial court. Throughout the proceedings, Mr. Robertson was referred to as "Father" by the juvenile court and by Mother. One of Mother's pleadings expressly states, "The minor children reside with the father, Charlie Robertson . . . ."[6] In *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005), this Court considered whether a mother could raise the issue of whether a father was a "legal parent" when it was not raised during the course of the trial court proceedings. In that case, the parents were never married, and the mother filed a petition to terminate the father's parental rights. *Id.* The father then filed a petition for visitation. *Id.* at 893. The trial court refused to terminate parental rights and ordered that a parenting plan be entered granting the father visitation. *Id.* The mother then filed a motion to alter or amend, attempting to raise the issue of whether the father was the child's legal parent. *Id.* at 895. On appeal, we found that the mother waived the issue by failing to raise it during the trial proceedings. *Id.* In the present case, the record does not demonstrate that Mother ever raised the issue of Father's status as a "legal parent" in the trial court. Mother consistently referred to him as the children's father, as did the juvenile court referee and judge, and the order of parentage Mother relies on is not in the record. Therefore, Mother has waived the issue. "A party may not raise an issue for the first time upon appeal." *In re M.L.D.*, 182 S.W.3d at 895 (citing *Cantrell v. Walker Die Casting, Inc.*, 121 S.W.3d 391, 396 (Tenn. Ct. App. 2003)).

Finally, Mother argues that the juvenile court erred in finding that a material change in circumstances had occurred because no prior custody order existed. As previously noted, the record does not reveal the extent of the prior proceedings in juvenile court. Both the referee's findings and the juvenile court judge's order state that a material change in circumstances had occurred since

---

[6] Mother does not suggest that Father is not the children's biological father. Both children bear Father's last name, and according to the CASA report, Father had visitation with the children every other weekend prior to this proceeding.

previous custody determinations.[7]  Even assuming that no prior custody order existed, the court's finding that a material change in circumstances had occurred was harmless error.  The statutory factors to be considered when a court makes a best interest determination in an initial custody proceeding are set forth in Tennessee Code Annotated section 36-6-106(a).  ***Harless v. Harless***, No. E2006-00192-COA-R3-CV, 2007 WL 906757, at *6 (Tenn. Ct. App. Mar. 26, 2007); *see also* ***Dillard v. Jenkins***, No. E2007-00196-COA-R3-CV, 2007 WL 2710017, at *3 (Tenn. Ct. App. Sept. 18, 2007).  In a modification proceeding, after a threshold finding that a material change in circumstances has occurred, the court makes a "fresh determination" of the best interest of the child, ***Gervais v. Gervais***, No. M2005-01483-COA-R3-CV, 2006 WL 3258228, at *3 (Tenn. Ct. App. Nov. 9, 2006); ***Costley v. Benjamin***, No. M2004-00375-COA-R3-CV, 2005 WL 1950114, at *4 (Tenn. Ct. App. Aug. 12, 2005), using those same factors enumerated in Tennessee Code Annotated section 36-6-106.  ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002).[8]  The juvenile court made extensive findings regarding facts relevant to the children's best interest, then named Father the primary residential parent.  We find no reversible error in the trial court's procedure.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the juvenile court.  Costs of this appeal are taxed to the appellant, Tracy Mayes, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[7] The referee's findings stated, "The court finds that the father has established that a substantial and material change in circumstances does exist from when the court previously addressed the custody situation of the children." The juvenile court judge's final order states that "the father established that there was a substantial and material change in circumstances in the children's lives since previous custody determinations."

[8] Of course, if the trial court had found that no material change of circumstances had occurred and dismissed the petition without reaching the best interest analysis, its use of the custody modification criteria would not have been harmless error. *See* ***Dillard v. Jenkins***, No. E2007-00196-COA-R3-CV, 2007 WL 2710017, at *3 (Tenn. Ct. App. Sept. 18, 2007).